IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERRY S., | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
|     v. | : | |
| | : | |
| MICHELLE KING,[1] | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant | : | NO. 24-2345 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                         February 3, 2025

Sherry S. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration Commissioner's ("the Commissioner") final decision, denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has remanded Plaintiff's case twice, in June 2019 and August 2022, and now, again, finding legal error, must issue a third remand. Despite three ALJ decisions, three federal court appeals, and additional reversible error in this case, this court cannot conclude that substantial evidence indicates that Plaintiff is disabled. *See Friedberg v. Saul*, 439 F. Supp. 3d 402, 403 (E.D. Pa. 2020). Hence, remand is warranted. For the reasons set forth below, Plaintiff's Request for Review will be granted, and Judgment will be entered in Plaintiff's favor and against Defendant.

### I.     PROCEDURAL HISTORY[2]

On February 10, 2014, Plaintiff applied for DIB, alleging disability beginning on May 7,

---

[1] Michelle King became Acting Commissioner of the Social Security Administration on January 21, 2025. Pursuant to Fed. R. Civ. P. 25(d), Ms. King is substituted as Defendant in this suit. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.
[2] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record.

2011,[3] caused by bilateral carpal tunnel syndrome ("CTS"), asthma and allergies, diabetes mellitus, anemia, obesity, degenerative disc disease of the cervical spine with radiculopathy, permanent nerve damage in neck and back, sleep apnea, severe migraines, pain and nerve damage that affects her shoulders, arms, wrists, hands, back and neck, bilateral rotator cuff tendinitis, lumbar radiculitis, posttraumatic chondromalacia patella, right foot fracture, hypertension, and high cholesterol. R. at 849. The Social Security Administration ("SSA") initially denied Plaintiff's claim on July 24, 2014, so she requested a hearing. *Id.* at 95, 99, 102. On October 12, 2016, Plaintiff appeared before Administrative Law Judge ("ALJ") Nadine Overton for that administrative hearing. *Id.* at 35, 849. On March 27, 2017, ALJ Overton, using the sequential evaluation ("SEP") process for disability,[4] issued an unfavorable decision. *Id.* at 849-59. The Appeals Council denied Plaintiff's request for review, on September 17, 2017, making ALJ Overton's findings the Commissioner's final determination. *Id.* at 867-69.

After ALJ Overton's decision became the Commissioner's final decision, Plaintiff sought

---

[3] Plaintiff amended her onset date to May 7, 2011, from September 1, 2010, at the 2024 hearing. R. at 1207.
[4] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

judicial review from this court. *Id.* at 875-76. On June 10, 2019, this court remanded the case for further proceedings.[5] *Id.* Plaintiff appeared before ALJ Regina Warren ("the ALJ"), on December 3, 2019, for a hearing, and she denied Plaintiff's claim on December 26, 2019. *Id.* at 794-807. The Appeals Council denied Plaintiff's request for review, on July 28, 2021. *Id.* at 1257-59. The case again came before this court, which issued a remand order on August 25, 2022.[6] *Id.* at 1263-73. The ALJ held a hearing on February 6, 2024. *Id.* at 1203. Plaintiff, represented by an attorney, and vocational expert, Linda Dezack ("the VE"), testified at the hearing. *Id.* The ALJ denied her claims on March 5, 2024. *Id.* at 1169-89. The relevant period considered by the ALJ was the timeframe between Plaintiff's amended alleged onset date of May 7, 2011, and her date last insured ("DLI") on December 31, 2013. *Id.* at 1179. After the ALJ's decision became the Commissioner's final decision, Plaintiff sought judicial review from this court on April 31, 2024. Both parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). Plaintiff filed a brief supporting her request for review, the Commissioner responded to it, and Plaintiff has filed a reply brief.

## II.    FACTUAL BACKGROUND

A.    <u>Plaintiff's Personal History</u>

Plaintiff, born on May 8, 1961, was 52 years old on her date last insured, December 31, 2013. R. at 1172, 1187. She was 62 years old when the ALJ rendered her decision. *Id.* at 1189. Plaintiff, who has a master's degree in early childhood education, last worked in September 2008 as an elementary school teacher. *Id.* at 1177, 1209.

---

[5] This court found that the ALJ failed to consider all of the relevant evidence of record. R. at 888.

[6] The undersigned found that the ALJ erred in her finding that Plaintiff could perform light work. R. at 1269. This is because the ALJ provided deficient reasons in her finding that Plaintiff's asthma, sleep apnea, and rheumatoid arthritis were not severe. *Id.* at 1270. She furthermore failed to explicitly include Plaintiff's proven limitations from asthma, sleep apnea, and rheumatoid arthritis in combination with the limitations caused by her severe impairments. *Id.* at 1272. The ALJ also failed to consider Plaintiff's CTS and rheumatoid arthritis in combination and to determine whether these impairments, in combination, limited her to occasional gross and fine finger manipulations. *Id.* at 1273.

3

B.        <u>Plaintiff's Testimony</u>

At the last hearing, Plaintiff testified that she has been disabled since May 7, 2011, as a result of bilateral CTS, asthma and allergies, diabetes mellitus, anemia, obesity, degenerative disc disease of the cervical spine with radiculopathy, permanent nerve damage in her neck and back, sleep apnea, severe migraines, pain and nerve damage to her shoulders, arms, wrist, hands, back, and neck, bilateral rotator cuff tendinitis, lumbar radiculitis, posttraumatic chondromalacia patella, a right foot fracture, hypertension, and high cholesterol. R. at 1210-18.

Plaintiff described the impact that her inflammatory arthritis and CTS has had on her hands. *Id.* at 1212. She frequently drops objects, and experiences significant difficulty writing and typing, because of the pain and cramping in her fingers and wrists. *Id.* at 1213. Wrist braces, which she wore regularly between 2011-2013, provide limited relief. *Id.* at 1215, 1218. Plaintiff experiences difficulty zippering and buttoning her clothes and relies on her mother at times for assistance. *Id.* at 1214. She also had problems with reaching above her shoulders and behind her. *Id.* Plaintiff also detailed issues with her knees. *Id.* at 1215. She experiences tingling when kneeling and rising and requires assistance from a chair or furniture to rise slowly. Plaintiff finds walking painful; she did not believe that she could stand or walk for four or more hours. *Id.*

Plaintiff recounted one of the side effects of her Type 2 diabetes as an uncontrollable bladder. *Id.* at 1216. She testified to recurring asthma from May 2011 through December 2013; she required treatments two to three times per day to relieve tightness in her lungs. *Id.* at 1177. Plaintiff also reported side effects from her medications, including restlessness, tiredness, memory lapses, and an inability to focus. *Id.* at 1217.

C.        <u>Vocational Expert's Testimony</u>

At the February 6, 2024 administrative hearing, the VE testified. R. at 1203. Based on

Plaintiff's file, she classified Plaintiff's past work as an elementary education teacher as a skilled[7] and light[8] position, performed at the medium[9] level of exertion. *Id.* at 1220. The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and background, capable of light work, and able to perform the following:

> stand and walk for six [hours], sit for six [hours], occasionally push and pull with . . . the right upper extremity and frequently with the left. The individual from a postural standpoint could occasionally climb stairs, occasionally stoop, kneel, crouch, and crawl. From a manipulative standpoint, the individual could frequently use the bilateral upper extremities to reach overhead, to reach in all directions, grasp, fine finger, and feel. From an environmental standpoint, the individual should avoid cold, heat, humidity, dusts, fumes, gases, chemicals, unprotected heights, and hazards.

*Id.* at 1220-21. The VE responded that, based upon the hypothetical, the individual could perform the past relevant work, but only as customarily performed. *Id.* at 1221. The VE testified that such an individual could also perform the light exertional level jobs of: (1) teacher's aide, 1,331,560 positions nationally; (2) companion, 711,181 positions nationally; and (3) garment sorter, 134,520 positions nationally. *Id.* at 1221-22. The ALJ next inquired about an individual, under the previously stated restrictions, who could "only stand and walk for four [hours], sit for six [hours]." *Id.* at 1222. The VE answered that such an individual could not do Plaintiff's past work, but could

---

[7] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

5

perform the companion and garment sorter positions with no change in job numbers. *Id.* at 1223.

Next, the ALJ asked the VE to consider an individual with the capacity to:

> stand and walk for four [hours], sit for six [hours], occasional pushing and pulling with the right upper extremity, frequent with the left. The individual could perform postural activities on an occasional basis with frequent balancing. From a manipulative standpoint, however, the individual could occasionally use the bilateral upper extremities for overhead reaching [in all directions], occasional grasping, but frequent fine fingering and feeling. Environmentally, avoid cold, heat, humidity, dusts, fumes, gases, chemicals, and unprotected heights.

*Id.* at 1223. The VE replied that, although this hypothetical individual could not perform Plaintiff's past work, they could perform the garment sorter and companion positions, and the position of an information clerk, which has approximately 48,260 positions nationally. *Id.* at 1224. The ALJ's subsequent hypothetical asked the VE to consider a sedentary[10] individual, subject to the following restrictions:

> can lift no greater than ten pounds occasionally, ten pounds frequently, stand and walk for two [hours], sit for six [hours], occasional pushing and pulling with the right upper extremity, frequent with the left. Posturals, all occasional. No ladders, ropes, or scaffolds. Manipulative is occasional bilateral upper extremity overhead, frequent reaching, grasping, fine fingering, and feeling.

*Id.* at 1225. The VE stated that such an individual could not perform Plaintiff's past relevant work. *Id.* However, after considering Plaintiff's transferrable skills, the in-school counselor position would be available, with approximately 100,000 jobs nationally. *Id.* at 1225-26. Finally, the ALJ asked the VE to consider an individual under the following circumstances:

> [the hypothetical individual] has the ability to understand, remember and carry out instructions for both simple and routine tasks, as well as detailed and complex tasks, but for one-third of the time, . . .

---

[10] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

> would have trouble persisting in work-related activities, coping with normal pressures in a competitive work setting, would be subject to taking unscheduled breaks throughout the day that would exceed customary tolerances and standards. The individual would have trouble and difficulty performing activities within a schedule, maintaining regular attendance within customary tolerances.

*Id.* at 1227-28. The VE opined that the hypothetical individual could neither perform Plaintiff's past work, nor any work in the national economy. *Id.* at 1228.

### III.   THE ALJ'S FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2013.

2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of May 7, 2011 through her date last insured of December 31, 2013 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, [Plaintiff] had the following severe impairments: rheumatoid/inflammatory arthritis; asthma; obesity; cervical degenerative disc disease with radiculopathy; bilateral carpal tunnel syndrome; and bilateral knee degenerative joint disease (20 CFR 404.1520(c)).

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except stand and/or walk for four hours and sit for six hours; occasionally push and/or pull with her right upper extremity and frequently with her left upper extremity; occasionally climb stairs, stoop, kneel, crouch, and crawl; frequently use her bilateral upper extremities to reach overhead, reach in all directions, grasp, fine finger, and feel; and avoid cold, heat,

      humidity, dust, fumes, gases, chemicals, unprotected heights, and hazards.

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on May 8, 1961 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).

11. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from May 7, 2011, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(g)).

R. at 1172-88.

## IV. DISCUSSION

A. <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if substantial evidence supports them. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion. *Id.* Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91. Nor is the court permitted to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359; *see Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.   Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that

9

the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents a return to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.  Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, while Plaintiff could not perform her past relevant work, she could perform other work, because suitable jobs in the national economy exist in significant numbers. R. at 1187. Appropriate jobs included those identified by the VE: (1) garment sorter, (2) companion, and (3) information clerk.[11] *Id.* at 1224. The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), she was not disabled from May 7, 2011, through December 31, 2013, the DLI. *Id.* at 1188.

Plaintiff argues that the ALJ's RFC assessment is flawed because the ALJ committed

---

[11] The court notes that the ALJ's hypothetical was flawed because it failed to ask the VE to consider an individual of Plaintiff's age during the relevant period. The hypothetical was also flawed because it did not explicitly ask the VE about job numbers during the relevant period. In fact, it appears that the VE's job numbers were likely not from the relevant period, because she eliminated two jobs that no longer existed in national numbers at the time of the hearing. R. at 1227. The court's remand order shall instruct the ALJ to correct these errors.

several errors that warrant remand, including her failure to solicit evidence from a medical expert, properly evaluate her subjective symptoms, and accurately characterize the care she received. Pl.'s Br. at 8-10, 12, 14-15.  The Commissioner rejects Plaintiff's contentions.  Def.'s Resp. at 1-2, 8-13.  This court finds that Plaintiff is entitled to relief.

    1.  <u>The ALJ Committed No Error by Not Soliciting Additional Expert Medical Evidence</u>

Plaintiff alleges that the ALJ should have ordered a consultative examination and solicited additional medical expert evidence.  Pl.'s Br. at 8, 12.  The Commissioner counters that, because the decision is supported by substantial evidence, she did not need to order a consultative examination or solicit additional medical evidence.  Def.'s Resp. at 1-2, 8.  This court finds that the ALJ did not err by failing to order a consultative examination or soliciting additional expert medical evidence.

An ALJ may order a consultative examination to resolve an inconsistency or to develop the record, if the record is insufficient to render a decision, but she is generally not required to do so, because it is within her sound discretion.  *See* 20 C.F.R. §§ 404.1519a, 404.1517, 404.1520b; *Heath v. O'Malley*, No. 23-CV-2398, 2024 U.S. Dist. LEXIS 46283, at *14 (E.D. Pa. Mar. 14, 2024) (citing *Thompson v. Halter*, 45 F. App'x. 146, 149 (3d Cir. 2002) (non-precedential)) (An "ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision."). While the regulations permit the ALJ to consult a medical expert to review the evidence, she was not required to seek out such medical expert testimony.  *See* 20 C.F.R. § 404.1527(f)(2)(iii); *Chandler*, 667 F.3d at 362.

This court finds that the record contained sufficient evidence for the ALJ to make a disability determination regarding Plaintiff's physical impairments, without the need to seek out a

consultative examination or solicit medical expert testimony. "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361. Furthermore, each fact incorporated into the RFC assessment need not have been found by a medical expert. *Id.* at 362. The ALJ cited the medical evidence and the weight she gave it. R. at 1184-86. This court cannot reweigh the medical evidence, *see Rutherford*, 399 F.3d at 552, and Plaintiff has not identified evidence that the ALJ ignored that supports a contrary conclusion. Nor has she shown that the record before the ALJ was insufficient to render a decision. Therefore, the court finds that the ALJ did not err.

    2. <u>The ALJ Improperly Evaluated Plaintiff's Subjective Symptoms</u>

Plaintiff argues that the ALJ improperly evaluated her testimony regarding her symptoms and limitations. Pl.'s Br. at 8-10. The Commissioner counters that the ALJ properly evaluated Plaintiff's subjective complaints. Def.'s Resp. at 9-13. This court finds that the ALJ did not properly evaluate Plaintiff's subjective symptoms and their consistency with the medical evidence.

When evaluating whether an individual is disabled, the ALJ is instructed to "assess and make a finding about an individual's residual functional capacity based on all the relevant medical and other evidence in the individual's case record" including evidence relating to impairments that the ALJ found were not severe at step two or did not meet or equal a listing at step three. *See* Social Security Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 SSR LEXIS 4, at *32 (S.S.A. Mar. 16, 2016). Relevant to the ALJ's task is a claimant's testimony about their symptoms, and a review of that testimony to ascertain the extent to which the claimant's symptoms are consistent with the objective medical evidence and all other evidence. *Id.* at *2-3. A claimant's symptoms are defined as the claimant's own description of her physical or mental impairment. *Id.* at *3. When evaluating the intensity and persistence of a claimant's

symptoms, the ALJ is authorized to consider, *inter alia*: (1) objective medical evidence; and (2) other evidence in the record, including the claimant's activities and the treatment the claimant has received for her conditions. *Id.* at *11-*20.

Plaintiff maintains that her initial statements upon filing her application are consistent with her 2024 hearing testimony, as summarized by the ALJ, and the medical evidence; hence, the ALJ should have accepted her testimony about her symptoms. Pl.'s Br. at 9. Plaintiff relates that she described at the hearing how the pain caused by her impairments affected her personal grooming; for example, she could not reach her hands above her head for hair care. *Id.* Furthermore, her testimony stated that she sometimes needed assistance getting in and out of the shower and with house and yard work. *Id.* Plaintiff testified that she was unable to walk more than ten minutes without requiring a break. *Id.* She also claimed that the medications she took caused extreme tiredness throughout the day and difficulties with memory and focus. *Id.* Plaintiff claims that, despite this testimony, the ALJ unreasonably reached a contradictory conclusion. *Id.* at 10.

The ALJ identified Plaintiff's severe, medically determined impairments as rheumatoid/inflammatory arthritis, asthma, obesity, cervical degenerative disc disease with radiculopathy, bilateral CTS, and bilateral knee degenerative joint disease. *Id.* at 1172. In the course of her decision, the ALJ recounted Plaintiff's subjective statements from multiple hearings, including her allegations of difficulty breathing, pain in her joints, and medication side effects. *Id.* at 1177-78. During the 2024 hearing, she questioned Plaintiff about her daily activities and physical limitations. *Id.* at 1209-18. The ALJ summarized the objective medical evidence, including imaging of Plaintiff's cervical spine that showed evidence of degenerative disc disease, *id.* at 321, 342, 1179, electrodiagnostic studies of her upper extremities showing cervical radiculopathy and bilateral CTS, and her testimony regarding medication side-effects. *Id.* at 352,

1179. One of Plaintiff's providers noted that she may be a candidate for pain management and epidural steroids. *Id.* at 385. Regarding her rheumatoid arthritis, in light of Plaintiff's insurance issues, *id.* at 1182, 1208, 1287, the ALJ considered that Plaintiff was under the care of a rheumatologist both before the alleged onset date and after the DLI for "symptoms suggestive of inflammatory arthritis" and positive rheumatoid factor. *Id.* at 1181-82. The ALJ indicated that these notes consistently showed no evidence of synovitis, full range of motion, and intact strength, with some findings of tenderness in the hand joints and ankle swelling. *Id.* at 288-89, 768, 775-780, 1181-82. The ALJ also noted another examination that showed some decreases in range of motion, tenderness, and slightly reduced strength. *Id.* at 370, 1180.

The ALJ acknowledged that she had to determine the extent to which Plaintiff's symptoms were consistent with the objective medical and other evidence, pursuant to SSR 16-3p. *Id.* at 1176. She reviewed Plaintiff's testimony, and chose to find that the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence.[12] *Id.* at 1179. Thereafter, the ALJ addressed, at length, Plaintiff's medical records and the medical opinion evidence. *Id.* at 1179-86. She then restated her conclusion that the evidence in the record was not consistent with Plaintiff's symptoms and, instead, was consistent with her assessment of Plaintiff's ability to engage in frequent fine fingering. *Id.* at 1187. In this case, while the ALJ purported to perform the analysis required by SSR 16-3p, she clearly failed to evaluate Plaintiff's ability to use her hands adequately. The findings indicative of rheumatoid arthritis, tenderness in the hand joints,

---

[12] Further, Plaintiff also complains that the ALJ ignored how her treating sources support her descriptions of her conditions, and mis-evaluated her ability to perform gross and fine-finger manipulation. Pl.'s Br. at 14. In this circuit, corroborating evidence must be evaluated. *Burnett v. Comm'r of SSA*, 220 F.3d 112, 122 (3d Cir. 2000). Plaintiff, however, does not specify which treating source opinions the ALJ ignored completely or in part, that support her characterization of her conditions. In fact, the ALJ reviewed opinion evidence from several of Plaintiff's treating sources. R. at 1179-86. Therefore, this court cannot find this allegation meritorious. As to her argument that the ALJ failed to give proper consideration to her limitation on performing gross and fine finger manipulation, Pl.'s Br. at 14, this court agrees, as discussed in this section.

14

and reduced strength suggest that they would impact Plaintiff's ability to manipulate objects, and to engage in frequent fine fingering, just as her testimony alleged. Nonetheless, the ALJ concluded that, despite the evidence cited corroborating Plaintiff's testimony, Plaintiff's "rheumatoid arthritis, even combined with her cervical degenerative disc disease with radiculopathy, carpal tunnel syndrome, and other impairments," did not limit her to "only perform[ing] occasional gross and fine finger manipulations," because she "retained intact motor strength and generally intact sensation of her bilateral upper extremities." *Id.* at 1184.

In concluding that Plaintiff could perform frequent gross and fine finger manipulations, this court finds inadequate the ALJ's reasoning in reconciling evidence regarding Plaintiff's synovitis, range of motion, and intact strength and sensation, with the findings of hand joint tenderness, reduced strength and sensation, decreased range of motion, and other symptoms of rheumatoid arthritis. In particular, this court highlights the ALJ's apparent failure to appreciate the record evidence regarding the reduced strength and sensation of Plaintiff's bilateral upper extremities. *See id.* at 285, 384. This circuit has stated that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Evidentiary conflicts must be resolved, and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-07. In addition, "[t]he ALJ must indicate in [her] decision which evidence [she] has rejected and which [s]he is relying on as the basis for [her] finding." *Schaudeck*, 181 F.3d at 433. These legal requirements are particularly important in order for this court to conduct a meaningful review. *See Burnett*, 220 F.3d at 120. The ALJ's analysis acknowledged that she must determine whether Plaintiff's symptoms were consistent with the objective medical and other evidence. *Id.* at 1176. This is precisely what she was required to do,

*see* 2016 SSR LEXIS 4, at *3, but in attempting to do so, she erred by failing to reconcile any conflicting evidence, and to properly state the reasons for her findings. Hence, there is sufficient basis to find that the ALJ committed legal error.

       3.   <u>The ALJ Erred in Her Explanation of Plaintiff's Care as Routine and Conservative</u>

Plaintiff faults the ALJ's characterization of the care she received as "routine and conservative." Pl.'s Br. at 15. The Commissioner contends that the ALJ did not commit an error. Def.'s Resp. at 10. This court finds that the ALJ erred by failing to adequately explain her characterization of Plaintiff's care as routine and conservative.

In her opinion, the ALJ supported her decision by stating that Plaintiff received "minimal routine and conservative care" for her CTS. R. at 1181. Unlike in her previous decision, the ALJ explicitly acknowledged a gap in treatment due to a lack of medical insurance. *Id.* at 1182. She, however, did not adequately explain what she meant by "routine and conservative," with respect to Plaintiff's bilateral CTS. *Id.* at 1181. She simply noted that Plaintiff did not require any surgical procedures. *Id.* The relevant regulations do not state that "minimal routine and conservative care" are bases for evaluating the Plaintiff's symptoms. Furthermore, this circuit has stated that the ALJ must provide an "explanation of reasoning" for her conclusion sufficient to enable meaningful judicial review. *Burnett*, 220 F.3d at 120. In short, the ALJ here did not do so, and, therefore, remand is warranted.

## V.   CONCLUSION

This court finds that the ALJ failed to evaluate Plaintiff's subjective symptoms adequately and to explain her characterization of Plaintiff's care properly. Accordingly, Plaintiff's Request for Review is, therefore, granted. An implementing Order and Order of Judgment follow.